## MICHAEL PORRECA v. STATE OF MARYLAND

[No. 1292, September Term, 1980.]

*Decided September 2, 1981.*

The cause was argued before MORTON, THOMPSON and MASON, JJ.

*Mark R. Thompson,* with whom were *Robert C. Heeney, Assigned Public Defender,* and *Heeney, Armstrong & Heeney* on the brief, for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Larry Alan Ceppos, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Michael Porreca, the appellant, was convicted in the Circuit Court for Montgomery County of attempted murder and sentenced to twenty years in prison. The principal question presented on this appeal is whether the trial judge erred in holding that the appellant, whose sole defense was that he was insane at the time of the offense as the result of his use of phencyclidine (PCP), a controlled dangerous substance, had failed to adduce evidence sufficient to place his sanity in issue.[1] As we hold that the appellant's evidence was sufficient and that the trial judge therefore erred, we shall reverse the conviction and remand for a new trial.

On December 15, 1979, the appellant, without provocation, warning, or apparent reason, brutally assaulted his roommate, Laurette Klieforth. The victim testified that the appellant, who had apparently left the apartment they shared early that morning, returned shortly before noon and walked past her into the kitchen without speaking. He emerged a moment later and struck her repeatedly in the face and hands with a kitchen knife, inflicting numerous wounds and causing loss of an eye. He then attempted to throw the victim off the balcony of the tenth floor apartment; unsuccessful in that attempt, he seized a broom and used it to beat her about the head and face. During the attack, the appellant told the victim several times that he wanted her dead and ceased his assault only after the victim told him that she was dead. He also told the victim, "I want your soul," "I got the first eye," and "I will get that other eye." After the attack, the appellant left the victim lying on the balcony. In addition to describing the appellant's behavior on the day of the assault, the victim also testified concerning a number of instances prior to the

---

1. Under Maryland law, an accused is presumed sane until, after the filing of a proper plea, see Md. Ann. Code Art. 59, § 25 (b) (1979 Repl. Vol., 1980 Cum. Supp.), there is adduced competent evidence sufficient to raise a reasonable doubt as to his sanity. Whether such evidence has been introduced is to be determined as a preliminary matter by the court. If the court finds the evidence sufficient to raise such a doubt, i.e., if the accused meets his threshold burden, the presumption falls and the state is obliged to prove beyond a reasonable doubt that the accused was sane. See Riggleman v. State, 33 Md. App. 344, 351-53, 364 A.2d 1159 (1976); Strawderman v. State, 4 Md. App. 689, 697-98, 244 A.2d 888 (1968), cert. denied, 252 Md. 733 (1969).

attack when the appellant exhibited bizarre, although non-violent, behavior.

When police and firefighters entered the apartment, they found the appellant lying naked and unconscious on the bed in the bedroom, his body rigid, his eyes open and his pupils dilated. When he became conscious, he told a police officer, "She wanted to kill me, but I killed her first. She has the devil in her," and, when asked to identify himself, he responded, "Satan." He also told a firefighter who asked whether he was using any medication that he was on heroin.[2]

The appellant claimed that he was insane at the time of the offense and thus not responsible for his conduct under Md. Ann. Code Art. 59, § 25 (a), which provides as follows:

> "A defendant is not responsible for criminal con-duct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disorder, he lacks substantial capacity either to appreciate the crim-inality of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms 'mental disorder' do not include an abnor-mality manifested only by repeated criminal or otherwise antisocial conduct."

His sole witness at trial was a psychiatrist, Dr. Brian Crowley, who testified that it was his opinion the appellant, at the time he attacked the victim, was suffering from a severe mental disorder, a psychosis, and as a result of that disorder lacked substantial capacity to appreciate the crim-inality of his conduct or to conform his conduct to the requirements of law. He stated that the psychosis had been

---

2. Although the appellant, after his arrest, was taken to a hospital and the arresting officer there requested that a "drug screen" be performed to determine whether the appellant was under the influence of any controlled dangerous substances, only a partial screening for barbiturates was con-ducted. The testing for barbiturates was negative. A paramedic who exam-ined the appellant at the scene of the crime testified that the appellant appeared to be under the influence of a drug, but that his appearance was not consistent with heroin use.

caused by the appellant's long-time use of PCP and possibly had been aggravated by an underlying mental disorder. Dr. Crowley testified that the appellant had a history of drug abuse, beginning with the abuse of prescribed medication in 1976, that he had used PCP and other controlled dangerous substances with some regularity, and that he had used PCP and cocaine the evening prior to the attack. Dr. Crowley indicated that PCP was capable of causing four or five different categories of mental disorders and that the drug produced an organic brain syndrome which was sometimes reversible and sometimes not. He also indicated that PCP could produce a psychosis of fairly long duration, with the user suffering the effects weeks or months after use of the drug ceased. The psychiatrist testified that manifestations of the appellant's psychosis had appeared in November 1979, at least one month prior to the assault on Miss Klieforth, and had continued for three to six months thereafter. He stated that the appellant was not continuously psychotic, having lucid intervals during this time, and that as the effects of the drugs abated, the psychotic symptoms diminished. Dr. Crowley agreed that the appellant was sane prior to beginning his use of PCP and other drugs and again after the effects of the drugs wore off, which was some two to four months after the attack; he also stated that the psychosis was the result of appellant's use of intoxicants and that he would not have assaulted Miss Klieforth had he not been using PCP.

The trial judge ruled that the psychiatrist's testimony was insufficient to raise a legal question as to the appellant's sanity and that it was not necessary for the state to present evidence to rebut the testimony. The judge based her ruling upon the decision in *Parker v. State,* 7 Md. App. 167, 254 A.2d 381 (1969), *cert. denied,* 256 Md. 747 (1970), *cert. denied,* 402 U.S. 984 (1971); she interpreted *Parker* as holding that the insanity defense is not available where the claimed insanity is the result of voluntary intoxication and where the accused is sane both before taking the intoxicant and after the intoxicant wears off. In *Parker,* in a lengthy opinion authored by Judge Orth, we stated:

"The great weight of authority is in accord with the rule as stated in 21 Am. Jur. 2d, *Criminal Law,* § 44, p. 128:

'It is well settled that temporary insanity which arises from present voluntary intoxication is no defense. This is true even though the defendant's temporary state of mind may meet the requirements of legal insanity contained in the M'Naghten rule, or whatever test of criminal responsibility is applied in the particular jurisdiction. On the other hand, if the accused was suffering from a settled or fixed insanity, even though caused by long-continued alcoholic indulgence, the rule is the same as in the case of insanity arising from any other cause. If the test of criminal responsibility locally applied is met, a settled or fixed insanity is a defense, even though it may have had its origin in long-continued voluntary intoxication, and regardless of whether defendant was under the influence of liquor at the time of the particular act.' " *Id.* at 174-75.

\* \* \*

"Regardless of what test is applicable to determining insanity, the majority distinguish between (1) the mental effect of voluntary intoxication which is the immediate result of a particular alcoholic bout; and (2) an alcoholic psychosis resulting from long continued habits of excessive drinking. The first does not excuse responsibility for a criminal act; the second may. In other words, if a person drinks intoxicating liquor and is sane both prior to drinking and after the influences of the intoxicant has worn off, but is insane by the applicable test while under the influence of the intoxicant, he comes under the first category. If he is insane whether or not he is directly under the influence of an intoxicant, even though that

insanity was caused by voluntary drinking, he comes under the second category. The cases usually refer to the first category as a 'temporary' insanity and the second category as a 'permanent,' 'fixed' or 'settled' insanity. These terms may be an oversimplification. What 'permanent,' 'fixed' or 'settled' means within the frame of reference is that the insanity not only existed while a person was under the influence of intoxicating spirits as an immediate result of imbibing, but existed independent of such influence, even though the insanity was caused by past imbibing. So if a person while in the throes of delirium tremens which may meet the test for insanity, commits a crime, he is not responsible for his criminal conduct, although such defect, resulting remotely from excessive drinking is only a temporary toxic state. It would seem that the distinction, notwithstanding the language of the cases, is not so much between temporary and permanent insanity as it is one between the direct results of drinking, which are voluntarily sought after, and its remote and undesired consequences. We adopt the majority view." (footnote omitted). *Id.* at 178-79.

We approved the following statement, found at 21 Am. Jur. 2d *Criminal Law* § 44 (1965):

"It is not necessary, however, that a mentally diseased condition brought on by voluntary use of intoxicants must have reached a permanent or incurable condition before the accused will be held irresponsible; on the contrary, such conditions as delirium tremens, or alcoholic hallucinosis, may be sufficient even if the condition was temporary." *Id.* at 180.

We also distinguished our decision in *Parker v. State,* 4 Md. App. 62, 241 A.2d 185 (1968), in which we had reversed the accused's original conviction and held that the issue of sanity had been raised, stating:

"There the evidence concerning the appellant's lack of criminal responsibility, unlike the instant case, was sketchy and the point was whether it was sufficient to permit the issue to go to the jury. We found that it was, the import of our holding being that from the evidence in that case presented the jury could have found that the appellant had a 'permanent' insanity 'brought on by ingestion of alcohol over a long period of time.' In the instant case the expert witnesses called by the appellant in his own behalf testified that if he had not ingested alcohol on the day of the offense he would have been responsible for his acts. It appeared clear from the evidence that the appellant was not suffering from a 'permanent' insanity." *Id.* at 182.

While we did state in *Parker* that the insanity defense is not raised where the evidence shows the accused is sane both before and after using an intoxicant, and insane only while under the influence of the intoxicants, we believe the trial judge in the instant case misconstrued our meaning. In *Parker,* we distinguished between two forms of insanity caused by the voluntary ingestion of intoxicants: on the one hand we rejected as a defense temporary insanity which resulted from the present consumption of intoxicants and which persisted only so long as the individual was under the direct influence of the intoxicant; on the other hand we accepted as a valid defense a settled condition of insanity, whether or not permanent, which, although created by the voluntary use of intoxicants, persisted even after the direct influence of the intoxicant had ceased, i.e., even after the chemical agent was no longer present in the individual's blood stream, and which was the result of continued or persistent use, rather than ingestion on a particular occasion. In the case at bar, although Dr. Crowley indicated that the appellant was sane after the effects of the PCP dissipated, it seems clear that he was describing a settled, although not permanent insanity. In referring to the effects of the PCP wearing off, it is apparent that he was not referring to the intoxication, to the effects of a single administration of the

drug, but rather to the psychosis, which he indicated was the product of a habitual continued pattern of drug abuse, and which persisted for several months after use of the drug ceased.

The facts of the instant case are remarkably similar to those in *People v. Kelly,* 516 P.2d 875 (Calif. 1973). There the accused suffered from a psychosis caused by repeated, voluntary use of LSD and mescaline over a two month period, with manifestations appearing one month prior to the offense. Psychiatrists testified at trial that the accused was rendered insane by the drugs she consumed and that she would not have committed the crime charged, the stabbing of her mother, had she not ingested the drugs which created the psychosis. The psychiatrists also testified that, while the psychosis was temporary, it persisted for months after drug use ceased. The California Supreme Court held that the accused's insanity was of a settled nature and that she was not responsible for her actions. We find the reasoning of the California Court persuasive. We hold, therefore, that the trial judge erred in ruling the evidence was insufficient to raise the question of insanity.

A distillation of the legal principles involved shows that, although we do not want a criminal to escape punishment by the simple expedient of getting drunk first,[3] neither do we want to punish anyone who is legally insane, even though the cause of his insanity is a long-term use of drugs or alcohol.

The state presents two arguments in support of the trial judge's decision. First, it argues that there was no evidence that the appellant was under the influence of PCP at the time of the offense. The argument completely misses the point; the issue is not whether the appellant was intoxicated at the time he committed the crime; it is whether he was suffering from a settled or fixed insanity. Second, the state argues that, under *Parker,* it is not enough that the appel-

---

3. The question of insanity aside, temporary drunkenness would not preclude the formation of a specific intent, if it could be shown that the intent was formed prior to the ingestion of a drug or alcohol.

lant was insane for the duration of the influence of a voluntarily administered intoxicant. As we indicated above, our statement in *Parker* referred to the intoxication resulting from a "particular alcoholic bout"; here Dr. Crowley's testimony was that the appellant's psychosis was not the result of the ingestion of PCP on any particular occasion.

The appellant also contends that the evidence was insufficient to permit the trial judge to find that he acted with the requisite specific intent. The evidence of the appellant's intent was abundant. During the attack, he repeatedly stated his intention to kill the victim and, in addition, he directed deadly force to vital areas of the victim's body. Either of these acts would be sufficient to permit the trial judge to make the necessary finding. There was no obligation on the trial judge to accept the testimony of the psychiatrist as to guilt or innocence even though it was obviously sufficient to trigger an inquiry into the sanity question.

> *Judgment reversed.*
> *Case remanded for a new trial.*
> *Costs not to be reallocated.*
> *Md. Rule 1082 f.*