## PEOPLE v MATULONIS

Docket No. 49167. Submitted January 6, 1982, at Detroit.—Decided
    March 8, 1982. Leave to appeal denied, 413 Mich 908.

   Stanley W. Matulonis was convicted by a jury in Wayne Circuit
   Court of assault with intent to commit murder and possession
   of a firearm in the commission of a felony and was sentenced,
   Joseph B. Sullivan, J. Defendant appeals. *Held:*

   1. The prosecutor misstated the law on insanity during cross-
examination of a defense expert witness and also in his final
arguments to the jury. Both defense counsel and the trial court
failed to correct the misstatement of the law, thereby severely
undermining a viable defense theory. As a result, defendant
has been deprived of a fair trial. Reversal of defendant's
conviction and a remand for a new trial is required.

   2. Any error which resulted from the prosecution's expert
witness's being permitted to state the law on insanity was
harmless. However, on retrial the prosecutor is cautioned that
an expert witness's opinion of the law is both incompetent and
irrelevant.

   3. The trial court's definition of legal sanity, as taken from
the standard jury instructions, was erroneous. While the error
may have been harmless, the parties are cautioned not to
repeat the error on retrial.

   Reversed and remanded.

1. CRIMINAL LAW — DEFENSES — INSANITY.
    Impairment of judgment, behavior, capacity to recognize reality,
    or ability to cope with the ordinary demands of life due to any

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 52.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 53-55, 155.
    Effect of voluntary drug intoxication upon criminal responsibility.
    73 ALR3d 98.
    Drug addiction or related mental state as defense to criminal
    charge. 73 ALR3d 16.
[3] Modern status of the rules as to voluntary intoxication as defense
    to criminal charge. 8 ALR3d 1236.
[4] 31 Am Jur 2d, Expert and Opinion Evidence § 69.

cause, physical or purely mental, may form the basis for a finding of legal insanity (MCL 330.1400[a]; MSA 14.800[400a]).

2. CRIMINAL LAW — DEFENSES — INSANITY — VOLUNTARY INTOXICA-
   · TION.
   A person who has voluntarily consumed alcohol or controlled substances at the time he commits an offense shall not thereby be deemed to have been legally insane (MCL 768.71a[2], 768.29a[1]; MSA 28.1044[1][2], 28.1052[1][1]).

3. CRIMINAL LAW — DEFENSES — INSANITY — VOLUNTARY INTOXICA-
   TION.
   Long-term voluntary intoxication which results in physical brain deterioration can form the basis of a viable insanity defense.

4. WITNESSES — EXPERT WITNESSES — OPINION OF THE LAW.
   An expert witness's opinion of the law is both incompetent and irrelevant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Kim Robert Fawcett,* Assistant State Appellate Defender, for defendant on appeal.

Before: BASHARA, P.J., and ALLEN and T. M. BURNS, JJ.

PER CURIAM. Defendant was convicted after a jury trial of assault with intent to commit murder, MCL 750.83; MSA 28.278, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). On August 1, 1979, he was sentenced to a prison term of 10 to 15 years on the assault conviction and a mandatory 2-year term on the felony-firearm conviction.

Defendant shot Kenneth Coggins in the back and neck with a shotgun following an argument in

a Southgate bar. He presented an insanity defense at trial.

Defendant raises numerous issues on appeal, one of which requires reversal. During cross-examination of a defense expert witness and in his final arguments to the jury, the prosecutor misstated the law on insanity, undermining defendant's theory of insanity.

Robert A. Bartz, a criminal psychologist testifying on defendant's behalf, concluded that defendant was mentally ill with schizophrenia and organic brain syndrome at the time of the alleged crime and was not criminally responsible. Bartz defined organic brain syndrome as tissue damage in the brain that prevented defendant from thinking and perceiving properly. Bartz said the deterioration in this case was caused, at least in part, by chronic alcohol and drug abuse.

On cross-examination, the prosecutor referred to the destruction of brain tissue as being "physical" and asked the witness if he was aware that the insanity statute prevented a person who voluntarily consumes alcohol or drugs from being held legally insane.

In final arguments, the prosecutor stated that brain deterioration was a physical illness and not a mental illness and that defendant had to have a mental illness to be legally insane. He went on to state that defendant's expert witness had testified that the brain deterioration was caused by alcohol. He continued:

"[Y]ou can't get over the fact that a person who drinks or uses drugs cannot be judged legally insane. * * * So if it's the alcohol that cases the deterioration of the brain * * * then he cannot be held legally insane. He may be an alcoholic but he is not legally insane."

Earlier, the prosecutor had stated that organic brain syndrome is a physical deterioration and not a substantial disorder in thought or mood. He had also stated:

"[Y]ou can't go out and drink youself into a stupor and then go and commit some act, and then turn around and say 'I was drunk. I didn't know what I was doing.'"

The prosecutor's arguments seriously undermined defendant's legally viable theory of the case. Defendant's theory was that he was mentally ill because his brain had physically deteriorated mostly due to chronic alcohol and drug abuse. His experts concluded that, due to this mental illness, defendant either did not know right from wrong or could not conform his behavior to the dictates of the law and, therefore, was legally insane at the time of the offense. Although there was testimony concering defendant's state of intoxication at the time of the offense, defendant's theory did not encompass such a claim nor did defendant present testimony concerning his alleged intoxication.

The prosecutor's cross-examination and argument suggested that defendant was attempting to disavow responsibility for the crime because of drunkenness at the time of the offense, so the prosecutor's reference to statute was proper in this context. The argument and cross-examination, however, further suggested that defendant's long-term use of alcohol, resulting in physical deterioration of the brain, was an improper ground for finding defendant legally insane. This was a clear misstatement of the law. MCL 330.1400(a); MSA 14.800(400a) defines "mental illness" as a "substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to

recognize reality, or ability to cope with the ordinary demands of life". The statute does not specify that the impairment must be due to mental stress and we believe that the Legislature intended that impairment due to any cause, physical or purely mental, if such a cause is possible, may form the basis for a finding of legal insanity.

The trial court instructed the jury, as required by MCL 768.29a(1); MSA 28.1052(1)(1) and MCL 768.21a(2); MSA 28.1044(1)(2), that a person who has voluntarily consumed alcohol or controlled substances at the time of the offense is not thereby legally insane. The court's instruction was correct and, as some evidence of intoxication was before the jury, the judge properly recognized his statutory duty to so instruct.

Although the judge did inform the jury that a person could be mentally ill and intoxicated at the same time, he never stated that legal insanity precipitated by long-term alcohol abuse remained a viable defense theory. Moreover, he never corrected the misstatement that mental illness may not be due to a physical cause.

Here, where the prosecutor seriously misstated the law, there was a danger that the jury would not understand that long-term voluntary intoxication resulting in physical brain deterioration could form the basis of a viable insanity defense. Had defense counsel acted skillfully, he would have asked the court to correct this misimpression. Had the judge acted to correct the misimpression, he would have given an additional instruction *sua sponte* to fully inform the jury of the viability of the defense theory. Neither did so, and the misstatement of the law was given to the jury.

We hold that here, where the prosecution's clear misstatement of the law remained uncorrected and

severely undermined a viable defense theory, the defendant has been deprived of a fair trial. This combination of events requires reversal of defendant's conviction and a remand for a new trial. *People v Knolton,* 86 Mich App 424; 272 NW2d 669 (1978).

Defendant raises six other issues, none of which merit reversal. We address two of the issues raised, however, to avoid possible error at retrial.

Defendant argues that the prosecution's expert witness improperly was permitted to state the law on insanity, thus invading the province of the trial judge. As no objection to the volunteered description of the law was made, and as the law stated was consistent with MCL 768.21a(2); MSA 28.1044(1)(2) and the court's instructions, any error that resulted was harmless. On retrial, however, the prosecutor is cautioned that an expert witness's opinion of the law is both incompetent and irrelevant. *People v Drossart,* 99 Mich App 66, 76-77; 297 NW2d 863 (1980).

The defendant also argues that the trial court's definition of legal sanity, taken from CJI 7:8:02A(12), was erroneous. The instruction given stated:

"A person is legally sane if, despite mental illness * * * that person possesses substantial capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the requirements of the law he is charged with violating." (Emphasis supplied.)

While defendant failed to object to the instruction that was given, we observe that this Court has recognized that the standard jury instructions should read "and" instead of "or". *People v Morris,* 92 Mich App 747, 749; 285 NW2d 446 (1979). While we have held the error to be harmless, *People v Ritsema,* 105 Mich App 602, 610; 307 NW2d 380 (1981), we caution the parties not to repeat the error on retrial.

Reversed and remanded for a new trial.