PEOPLE v DOAN

Docket No. 74011. Submitted December 20, 1984, at Detroit.—Decided
    March 4, 1985. Leave to appeal denied, 422 Mich —.

    Donald Doan was convicted of first-degree murder, St. Clair
        Circuit Court, Ernest F. Oppliger, J. The sole issue at trial was
        whether defendant was insane at the time of the offense.
        Defendant appealed, alleging that the trial court erred in
        allowing testimony of the prosecution's expert witness in which
        the witness gave his own interpretation of the terms "insani-
        ty", "mental illness" and "mental retardation" as they are used
        in the pertinent statutes and that the witness's interpretations
        were erroneous. *Held:*

        1. Expert witnesses may not express an opinion on the
    Legislature's intent in adopting statutory language. It is the
    function of the trial court to instruct the jury on the meaning
    of statutes.

        2. The witness's definition of mental illness as "psychosis" is
    more restrictive than the statutory definition and was im-
    proper.

        3. It was improper for the witness to define mental retarda-
    tion as an IQ of 60 or less, as the Legislature has not quantified
    the concept of mental retardation.

        4. The trial judge improperly allowed the jury to speculate
    upon which portion of the testimony was the legitimate expres-
    sion of opinion and which was improper statutory construction.

        5. The definitions used by the witness were excessively collo-
    quial and imprecise and could have confused the jury.

        6. The allowance of the testimony was not harmless error.
    The error could not be cured by the opportunity for cross-
    examination, nor was it cured by the judge's telling the jurors
    to disregard any testimony which they perceived to be instruc-

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial §§ 574, 575.
[1, 5] 31 Am Jur 2d, Expert and Opinion Evidence § 36 *et seq.*
[2] 75 Am Jur 2d, Trials § 600 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 776 *et seq.*
[4] 41 Am Jur 2d, Incompetent Persons §§ 21, 23.

tional in nature. The court had the responsibility to tell the jury what portions of the testimony to disregard.

Reversed.

BRONSON, P.J., concurred in the result only.

1. CRIMINAL LAW — JURY INSTRUCTIONS — EXPERT WITNESSES.

It is the exclusive responsibility of the trial judge to find and interpret the applicable law in any case; while an expert witness may give opinions, even though couched in legal language which embraces an utlimate issue in the case, the witness's function does not extend to enlightening the court or jury on matters of law (MRE 704).

2. CRIMINAL LAW — JURY INSTRUCTIONS.

The law must be presented to the jury by means of judicial instructions, not through the give-and-take of direct and cross-examination of witnesses.

3. CRIMINAL LAW — HARMLESS ERROR.

An error in a criminal trial is not harmless if it is reasonably possible that in a trial free of the error even one juror would have voted to acquit.

4. MENTAL HEALTH — MENTAL ILLNESS — CRIMINAL LAW.

Mental impairment due to any cause, either physical or purely psychological, may form the basis for a finding of mental illness (MCL 330.1400a; MSA 14.800[400a]).

5. WITNESSES — EXPERT WITNESSES — TESTIMONY.

Expert witnesses should testify expertly and should be required to define their terms by using words which do not cause the jurors to speculate according to their individual imaginations; counsel and the trial court have a responsibility to make certain that the language used by expert witnesses is professional, clear, and within the parameters of the standards set by the law.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

State Appellate Defender (by *John Nussbaumer),* for defendant on appeal.

Before: BRONSON, P.J., and HOOD and SHEPHERD, JJ.

SHEPHERD, J. A jury convicted defendant of first-degree murder, MCL 750.316; MSA 28.548. The sole issue at trial was whether defendant was insane when he stabbed the victim, his brother, several times with a steak knife. The trial court sentenced defendant to life imprisonment. We reverse and remand for a new trial due to the nature of a prosecution psychologist's testimony regarding the legal definitions of insanity, mental illness and mental retardation.

More specifically, we hold that:

A. Expert witnesses may not express an opinion on the Legislature's intent in adopting statutory language. It is the function of the court to state the meaning of statutes.

B. Mental illness as defined by the Legislature is not limited to psychosis.

C. The concept of mental retardation has not been quantified by the Legislature and it was error for an expert witness to testify that one may not be considered mentally retarded unless he or she has an IQ of 60 or less.

D. Legal definitions must be presented to the jury by means of judicial instructions and not through the give-and-take of direct and cross-examination. The jury may not be allowed to speculate on which portion of an expert's testimony is the legitimate expression of opinion and which is impermissible statutory construction.

E. An expert's testimony must be couched in language which is professional, clear and within the parameters of the standards set by the law. Experts may not even partially base an opinion on an insanity defense by the use of such colloquial and imprecise expressions as a defendant did or did not go "bananas" and was or was not "out in left field".

A psychologist testified for the defense regarding

defendant's mental condition at the time of the killing. The witness indicated that defendant's "IQ" was in the dull normal range and that he had a limited ability to arrange and process information and to relate to meaning and symbols. According to this witness, defendant had "severe" neuropsychological problems, which might well have originated in his early childhood. The witness concluded that defendant was insane when he killed his brother.

In rebuttal, the people's expert witness testified that defendant was neither mentally ill nor retarded and, therefore, not insane. Over repeated objections by defense counsel, the judge allowed the psychologist to give his interpretation of the meaning of the terms "insanity", "mental illness" and "mental retardation", as they are used in the pertinent statutes. See, *infra.* The defense attorney argued that it was not the witness's function to give opinions as to what the law means. The judge replied that the witness would be subject to cross-examination and that the jury should disregard anything which they "perceive[d] as instructions from this witness".

The psychologist then proceeded to give the testimony now complained of on appeal. First, he opined that the statutory definition of mental illness was drawn from the definition of "psychosis" in a manual of the American Psychiatric Association. The manual, according to the witness, defines psychosis as "a gross distortion of reality, when someone's just out in left field". Secondly, he defined mental retardation as "an IQ of 60 or less". Finally, he gave his views on the meaning of legal insanity:

"[T]hat's what we kind of are trying to determine, what a person was thinking at the time of the alleged

crime, was there any indication of mental retardation, was this behavior in their control, could they control their behavior, or were they driven by some impulse, some psychotic thought, or were they so retarded that did they pick up a gun and then it was bananas. Did they not understand that the bullets would come out of the gun."

The witness admitted on cross-examination that there are "lesser degrees" of mental disorder, but maintained that "generally mental illness is defined as a psychosis".

The Legislature has defined "legal insanity", "mental illness" and "mental retardation" as follows:

"A person is legally insane if, as a result of mental illness as defined in section 400a of Act No. 258 of the Public Acts of 1974, being section 330.1400a of the Michigan Compiled Laws, or as a result of mental retardation as defined in section 500(g) of Act No. 258 of the Public Acts of 1974, being section 330.1500 of the Michigan Compiled Laws, that person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." MCL 768.21a(1); MSA 28.1044(1)(1).

"As used in this chapter, 'mental illness' means a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400a; MSA 14.800(400a).

" 'Mentally retarded' means significantly subaverage general intellectual functioning which originates during the developmental period and is associated with impairment in adaptive behavior." MCL 330.1500(g); MSA 14.800(500)(g).

Although these definitions are constructed of vague terminology, perhaps due to the imprecise nature of the subject matter, we agree with defendant's claim that expert witnesses go beyond their

proper function when they give an opinion to the jury concerning the Legislature's intent. Since we find the error to be prejudicial in the context of this case, we reverse and remand for a new trial.

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." MRE 704; *People v McClinton Robinson,* 417 Mich 231; 331 NW2d 226 (1983). There is nothing wrong with a psychiatrist's or psychologist's testifying that defendant was or was not insane when he performed the act. However, an expert's opinion as to the applicable law of criminal responsibility or insanity is of no aid to the jury and could possibly confuse them in light of their duty to apply the law solely as explained by the judge at the end of the case. *People v Drossart,* 99 Mich App 66, 76; 297 NW2d 863 (1980), *lv den* 410 Mich 892 (1981). "[I]t is the exclusive responsibility of the trial judge to find and interpret the applicable law." *People v Lyons,* 93 Mich App 35, 46; 285 NW2d 788 (1979). While the expert may give opinions, even though couched in legal language which "embraces an ultimate issue", MRE 704, the witness's function does not extend to enlightening the court or jury on matters of law. The distinction has been consistently followed by the courts of this state. *In re Powers Estate,* 375 Mich 150, 172-173; 134 NW2d 148 (1965), *Kempsey v McGinniss,* 21 Mich 123 (1870).

We find good reason to apply this rule to cases like this one. A psychologist has no special knowledge regarding what the Legislature meant when it defined the relevant terms. Rather, this witness appears to have drawn his opinion of the Legislature's intent by reference to a distinctly non-legislative standard, namely, a manual of the American Psychiatric Association. We do not mean to

belittle the integrity of that organization, but it does not enjoy the status of a law-making body. Though the concepts of mental illness and insanity suggest reference to the medical and psychiatric sciences, "the definition used to describe those terms, at least for purposes of avoiding criminal responsibility, must come from the law". *Drossart, supra,* p 75; see also, *People v Martin,* 386 Mich 407, 420-422; 192 NW2d 215 (1971). "[A] basic postulate in a democratic society is the avoidance of government by experts in crucial areas of law-making and adjudication." Hall, General Principles of Criminal Law (2d ed), p 465. As this Court noted in *Drossart, supra,* pp 76-77:

"The testimony is incompetent because opinions by medical experts on the correct legal standard of criminal responsibility in Michigan [are] outside the range of the witness's expertise in the field of mental diseases. *Commonwealth v O'Conner,* 387 NE2d 190, 195-196 (Mass App, 1979), *State v Kelly* [118 NJ Super 38; 285 A2d 571 (1972)], *supra,* 7 Wigmore [Evidence], *supra,* § 1952. The testimony is also irrelevant because it is not 'otherwise admissible' under MRE 403, 701, 702. MRE 704, McCormick [Evidence], *supra,* § 12, p 27, fn 47. Thus, even if the medical expert were competent to testify about his understanding of the applicable legal standard for insanity, the resultant 'confusion of the issues or misleading the jury' by a potentially conflicting instruction given by the trial judge would be a proper ground for excluding the testimony from trial. MRE 403. This is especially true where there is possibility that the witness might develop his own legal definition, standard, or criterion for measuring criminal insanity or mental illness."

The people urge that the error was harmless because the judge made it clear to the jury that it was his responsibility to instruct on the law. We disagree. In response to the defense attorney's

objections, the judge stated that there would be an opportunity for cross-examination. This opportunity could not cure the error. The law must be presented to the jury by means of judicial instruction, not through the give-and-take of direct and cross-examination. The judge also told the jury to disregard anything in the witness's testimony which the jury perceived to be instructional in nature. This response could only have confused the jury. A group of laypersons is ill-suited to sift through an expert's testimony and categorize it as either legitimate expression of opinion or incompetent renditions of the law of insanity. It was the responsibility of the court to tell the jury which specific portions of the testimony should have been disregarded.

"[I]f it is reasonably possible that in a trial free of the error complained of even one juror would have voted to acquit, the error was not harmless." *People v Gallon,* 121 Mich App 183, 189; 328 NW2d 615 (1982). Improper admission of the expert's testimony was reversible error. The testimony went to the heart of the single, controlling issue and "might have operated to substantially injure the defendant's case". *People v Allen,* 94 Mich App 539, 544; 288 NW2d 451 (1980) (Opinion of RILEY, J.), *lv den* 411 Mich 1044 (1981).

The testimony did harm to defendant's cause because it contained definitions of mental illness, retardation, and insanity which are significantly more narrow than those mandated by the Legislature. The Legislature might have chosen to define "mental illness" exclusively in terms of "psychosis", but it did not. MCL 330.1400a. The difference is not one of mere semantics. The witness testified that "psychosis" is "a *gross* distortion of reality". The statute defines "mental illness" as "a *substantial* disorder of thought or mood which *signifi-*

*cantly* impairs judgment", etc. *Id.* (Emphasis supplied.) Clearly, these defintions diverge in the impression which they conveyed to the jury. The witness's version conjures images of an accused being totally removed from reality while the Legislature's definition (which uses the words "significantly" and "substantial" rather than "gross") encompasses a broader range of mental affliction. Indeed, mental impairment due to any cause, physical or purely psychological, may form the basis for a finding of mental illness. *People v Matulonis,* 115 Mich App 263; 320 NW2d 238 (1982), *lv den* 413 Mich 908 (1982). Thus, the witness's restriction of the term "mental illness" to the realm of "psychosis" resulted in a standard which is at odds with legislative intent.

This broader definition of mental illness as stated by the Legislature does not allow all persons suffering from mental illness to escape conviction for criminal acts. The statute further requires that the person with such a mental illness "lack[s] substantial capacity either to appreciate the wrongfulness of his conduct" or that the person be unable as a result of the mental illness "to conform his conduct to the requirements of law". MCL 768.21a(1); MSA 28.1044(1)(1).

The harm done by the error is more obvious when we consider the witness's definition of mental retardation as an IQ of 60 or less, a definition which is absent from the statute. The Legislature defined the same condition as "significantly subaverage general intellectual functioning". MCL 330.1500(g). Again, the statutory terminology is more expansive. This statement was particularly prejudicial in light of the same witness's testimony that defendant's IQ was greater than 60.

The Legislature chose not to quantify the concept of mental retardation. If we were to allow the

expert in this case to say that the Legislature has drawn the line at 60, another expert in this or another case might pick yet another number. We would thus be faced with juries finding that the statute has a different meaning in each of a multitude of cases. All that experts may do is state whether a defendant fits within the language used by the Legislature and state the reasons for his or her opinion. As indicated, the expert may not state what the Legislature meant. As in the case of mental illness, once it is determined that a defendant is mentally retarded, the defendant would then have to meet the second prong of the statutory requirement, *i.e.,* that the mental retardation results in a lack of "substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law".

We have indicated that the prosecution expert's testimony was inadmissible since it impermissibly defined the meaning of legal terms the definition of which is the proper function of the court. We have also indicated that the definitions used by the expert were incorrect and excessively narrow. We further find that the testimony of the expert was excessively colloquial and imprecise. A colloquial expression such as "bananas" can signify a different degree of anti-social conduct to each juror and serves no purpose other than to create confusion. So too the expression used by the expert, "just out in left field", as an alternative definition of psychosis, was a definition certainly not found in the statute. Expert witnesses should testify expertly and should be required to define their terms by using words which do not cause the jurors to allow their individual imaginations to run free. We can no more allow such speculation based upon a prosecution expert's testimony than we could al-

low a defense expert to testify that a defendant is legally insane because he went "bananas" and was "out in left field". Counsel and the court have a responsibility to make certain that the language used by experts is professional, clear, and within the parameters of the standards set by the law.

An example of a serious deviation from this last requirement is the expert's statement that his view of what the Legislature meant by mental retardation or psychotic thought involves the defendant's not understanding that bullets would come out of the gun. From this testimony the jury might conclude that defendant could not be mentally ill if he understood that bullets come out of a gun. The statute does not imply such a conclusion and the jury should not have been allowed to speculate that it does.

We have reviewed the insanity instructions given by the trial court to which no objections were raised. The instructions basically followed CJI 7:8:02A and were not objectionable. As indicated herein, the problem lies in the admission into evidence of incorrect and highly prejudicial comments and definitions to which objections were made and which could have led the jury to apply the instructions incorrectly. The entire problem can be avoided if counsel for both sides caution expert witnesses on the need to testify appropriately. Furthermore, those who come into court to testify as experts should be aware that they are not engaging in parlor conversation. Rather, they are an important part of the serious process of determining guilt or innocence in criminal cases.

Reversed and remanded for new trial.

BRONSON, P.J., concurs in the result only.