PEOPLE v CONRAD

Docket No. 72823. Submitted April 10, 1985, at Detroit.—Decided January 22, 1986. Leave to appeal denied, 424 Mich 907.

Glenn Conrad was found guilty of second-degree murder, but mentally ill, Recorder's Court of Detroit, John H. Gillis, Jr., J. Defendant killed his brother while apparently in a psychotic state after having used phencyclidine (PCP) a few times over a period of two weeks. He was initially held to be incompetent to stand trial and was admitted to the Center for Forensic Psychiatry. He was treated and later found to be competent to stand trial. At the trial defendant raised the defense of insanity. The trial court ruled that the defense of insanity was not available because the defendant had willingly and knowlingly ingested PCP. Defendant was sentenced to life imprisonment, and appealed. *Held:*

1. MCL 768.21a(2), which precludes deeming a defendant legally insane where he is under the influence of voluntarily consumed alcohol or injected controlled substances at the time of his offense, does not automatically preclude for all time the assertion of an insanity defense if a person is rendered insane by the voluntary ingestion of a drug. A condition of insanity caused by drug use, even if temporary, may be deemed legal insanity if the condition was not limited merely to periods of intoxication. Thus, if the defendant is actually and demonstrably rendered insane by the drug, an insanity defense is not absolutely precluded.

2. The facts in this case indicate that the defendant was insane at the time of the killing. The trial court's absolute

REFERENCES

Am Jur 2d, Criminal Law §§ 55, 68, 99, 103, 109, 116.

Competency to stand trial of criminal defendant diagnosed as "schizophrenic"-modern federal cases. 63 ALR Fed 696.

Competency to stand trial of criminal defendant diagnosed as "schizophrenic"-modern state cases. 33 ALR4th 1062.

Drug addiction or related mental state as defense to criminal charge. 73 ALR3d 16.

Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.

rejection of any consideration of the insanity defense deprived defendant of a fair trial.

Reversed and remanded.

V. J. Brennan, J., dissented. He would hold that, giving the trial court much discretion in determining whether a defendant is legally insane, the trial court in this case did not clearly err in finding that the defendant was not legally insane. Judge Brennan would hold that there was more than sufficient evidence to support the finding of guilty but mentally ill. He would affirm.

### Opinion of the Court

1. Criminal Law — Defenses — Insanity — Voluntary Drug Use.

    A condition of insanity caused by drug abuse, even if temporary in nature, may be legal insanity if the condition was not limited merely to periods when the defendant was intoxicated by the drug; if the defendant is acutally and demonstrably rendered insane by the ingestion of mind-altering substances, an insanity defense is not absolutely precluded merely because the drug use was voluntary.

### Dissent by V. J. Brennan, J.

2. Criminal Law — Defenses — Insanity — Judge's Discretion.

    *A trial court should be given much discretion, especially when sitting without a jury, in reaching a decision on the question of whether a defendant was legally insane at the time he committed the charged offense.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Gerald S. Surowiec,* for defendant on appeal.

Before: Hood, P.J., and V. J. Brennan and R. M. Maher, JJ.

Per Curiam. Defendant was charged with first-degree murder, MCL 750.316; MSA 28.548, and was found guilty but mentally ill following a bench trial of second-degree murder, MCL 750.317;

MSA 28.549. Sentenced to life imprisonment, defendant appeals as of right.

The conviction arose from defendant's slaying of his younger brother, Jason, in the summer of 1982. Prior to that summer, defendant, who was 18, had been an exceptional student who also worked for the Police Officers Association selling tickets and performing other fundraising activities. In 1982, however, he quit his job and dropped out of school. About the 1st of July, defendant's cousin, Jack Webb, age 25, moved in with the defendant, his parents and younger brother, Jason. Webb testified at trial that he and the defendant and other friends had smoked phencyclidine (PCP) or "angel dust" about four and five times in the first two weeks of July. He testified that the substance was referred to as "angel dust" in the defendant's presence and that he smoked it willingly. The last time Webb had seen the defendant smoking the drug was July 8. Webb stated that the "high" from the drug lasted up to 1½ days, but that effects could last two weeks. He stated that he himself had felt irrational and murderous impulses while taking PCP.

Webb testified that he observed an abrupt change in the defendant's behavior beginning on Sunday, July 11. The defendant became obsessed with the Bible, making statments that Webb described as "totally off the wall". At one point the defendant stated that he had to kill someone to get to heaven. The witness stated that the defendant's father questioned his interpretation of the Bible, but the defendant became even more zealous, stating that he was Christ.

On the morning of July 16, 1982, Webb awoke at 8:30 a.m. to screams coming from the bedroom of Jason. Webb kicked in the bedroom door and saw the defendant sitting on Jason, stabbing him.

Jason died as a result of 45 stab wounds. As police arived, the defendant, covered with blood, walked out of the house and calmly stated his name, age, birthdate, and address.

Defendant timely raised insanity as a defense. He was evaluated for competency to stand trial at the Detroit Recorder's Court Psychiatric Clinic on August 2 and August 5, 1982, and described as incoherent and agitated. He was held to be incompetent and admitted to the Center for Forensic Psychiatry on August 17, 1982.

Upon admission he was said to be in a "grossly psychotic state". According to the forensic examiner's report:

"He was agitated, disoriented, hallucinating, incoherent, and delusional and was placed in a seclusion room for protection of self and others. While secluded, he continued to be incoherent, lapped his food up like a dog, intermittently shouted out nonsensical statements, pounded and kicked at the walls and door, and on two occasions, smeared himself with feces."

The defendant was treated with psychotropic medication, and his condition was stabilized after six weeks. Following an evaluation on October 27, 1982, the forensic center found the defendant competent to stand trial.

Newton Jackson, a forensic psychologist testifying for the prosecution, had evaluated the defendant on December 16, 1982. It was Jackson's opinion that the defendant was suffering from toxic psychosis at the time of the murder and could not control himself.

Jackson stated that the defendant's psychotic state on the day of the crime was probably caused by PCP, although he could not positively rule out

a true mental illness. He stated that the psychosis which occurred about two weeks after the crime was apparently a true mental illness. He stated that in 5% to 10% of the cases, PCP could cause a true, long-term mental illness.

The defendant's expert witness, Dr. Bruce Danto, a psychiatrist, examined the defendant on February 22, 1983. He stated that the defendant had recovered but was still in need of psychiatric care. He testified that the defendant told him that he didn't know it was PCP that he was smoking and that once he found out what it was, he stopped. It was Danto's opinion that the defendant was "absolutely insane" at the time of the murder and unable to control his impulses. The doctor testified that PCP is absorbed in the fat cells and the effects persist for as long as three to five years. He stated that the PCP could have easily triggered a psychosis five days after it was ingested.

The trial court held that, because the defendant willingly and knowingly ingested PCP, he could not make use of the defense of insanity. He therefore found the defendant guilty but mentally ill of murder in the second degree. At sentencing, the prosecutor recommended a minimum sentence of 7½ years. The court, however, imposed the life sentence.

Defendant asserts on appeal that the sentence imposed was so severe that our conscience should be shocked[1] and also that the evidence was insufficient to support the finding of defendant's guilt. We find the peripheral issue of the trial court's

[1] On July 2, 1984, on our own motion, we remanded this matter to the trial court for a record of the considerations underlying the sentence imposed. The trial judge's statements of the reasons for the sentence as stated at the remand hearing were cursory but adequate. If we were to decide the sentencing issue, the sentence imposed would not shock our conscience.

rejection of the insanity defense dispositive, and that it requires reversal and a new trial.[2]

The trial court based its rejection of the insanity defense on MCL 768.21a(2); MSA 28.1044(a)(2), which states:

"(2) A person who is under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his alleged offense shall not thereby be deemed to have been legally insane."

Defense counsel at trial chose to concentrate on the voluntariness of the defendant's ingestion of the PCP. The trial court quite properly rejected this argument, since there was little evidence that the defendant's use was inadvertent, and a great deal of evidence to the contrary. This does not, however, end the inquiry. The key phrases in the above statute are "under the influence" and "at the time of his alleged offense". The statute therefore does not automatically preclude for all time the assertion of an insanity defense if a person is *rendered insane* by the voluntary ingestion of a drug.

In *People v Matulonis,* 115 Mich App 263; 320 NW2d 238 (1982), this Court held that insanity due to brain deterioration caused by voluntary alcohol and drug abuse was a valid defense in spite of the above statute and in spite of the fact that the defendant may *also* have been intoxicated at the time of the offense. The implication of *Matulonis* is that a distinction must be made between insanity and intoxication where either or both are caused by voluntary substance abuse.

---

[2] The defendant also argues that he was unable to form *any* intent to commit murder and therefore lacked the necessary *mens rea* for conviction. Second-degree murder is a general intent crime. *People v Barnard,* 93 Mich App 590, 592; 286 NW2d 870 (1979). Intoxication is not a defense to a crime of general intent. Therefore, defendant's argument of lack of intent due to intoxication is without merit.

The rule is stated in 21 Am Jur 2d, Criminal Law, § 54, pp 171-173:

"Temporary insanity which arises from present voluntary intoxication is no defense to a criminal charge. This is true even though the defendant's temporary state of mind may meet the requirements of legal insanity contained in the M'Naghten rule, or whatever test of crimal responsibility is applied in the particular jurisdication. *On the other hand, if the accused was suffering from a settled or fixed insanity,* even though caused by long-continued alcoholic indulgence, the rule is the same as in the case of insanity arising from any other cause.

"If the test of criminal responsibility locally applied is met, a settled or fixed insanity is a defense, even though it may have had its origin in long-continued voluntary intoxication, and regardless of whether defendant was under the influence of liquor at the time of the particular act. *It is not necessary, however, that a mentally diseased condition brought on by voluntary use of intoxicants must have reached a permanent or incurable condition before the accused will be held irresponsible* * * *."* (Footnotes omitted, emphasis added.)

The quoted language suggests that the insanity in such cases must be of long duration. We find instructive, however, cases from other jurisdictions which have held that a "settled condition of insanity" caused by drug abuse, even if *temporary* in nature, may nevertheless be legal insanity if the condition was not limited merely to periods of intoxication.

In *People v Kelly,* 10 Cal 3d 565; 111 Cal Rptr 171; 516 P2d 875 (1973), the defendant, who had used Mescaline and LSD fifty to one hundred times in two months preceding the offense, was tried for attacking her mother with a knife. Three psychiatrists whose reports were admitted into

evidence found the defendant psychotic at the time of the attack. The trial court found that, while defendant was indeed psychotic both before and after the attack and "was not capable of understanding that her act was wrong", her insanity was no defense because it was not of a settled and permanent nature, and, in addition, was produced by the voluntary ingestion of hallucinatory drugs. The trial court therefore found that the defendant was legally sane. The Supreme Court of California reversed:

"As already pointed out, if defendant was insane at the time of the offense, it is immaterial that her insanity resulted from repeated voluntary intoxication, as long as her insanity was of a settled nature. The trial court made a compound finding that defendant's insanity 'was not of a settled and permanent nature'; however, we have pointed out that insanity need not be permanent in order to establish a defense. The trial court also found that defendant suffered from a 'temporary psychosis' that ' was operating on this defendant from some time in November, at least through December and beyond the date of December 7.' We hold that such a temporary psychosis which was not limited merely to periods of intoxication (see fn.9) and which rendered defendant insane under the M'Naughton test constitutes a settled insanity that is a complete defense to the offense here charged." *People v Kelly, supra,* p 577.

In a case similar to the instant case, *Porreca v State,* 49 Md App 522; 433 A2d 1204 (1981), the defendant brutally assaulted his roommate, later identifying himself as Satan. The victim testified that the defendant, a long-time PCP user, had exhibited bizarre, though nonviolent, behavior a number of times prior to the attack. The defendant regained his sanity some two to four months after the assault.

The Court of Special Appeals of Maryland, citing *Kelly,* held that a temporary condition of insanity which was the result of continued or persistent drug use, which persisted even after the direct influence of the intoxicant had ceased, was a "settled condition of insanity" providing a valid defense.

We agree with the reasoning of the California and Maryland courts that if a defendant is actually and demonstrably rendered insane by the ingestion of mind-altering substances, an insanity defense is not absolutely precluded.

In the instant case, the defendant began to exhibit irrational behavior on Sunday, July 11, six days before the murder. In addition, while he was lucid for a short period of time after his arrest, his mental condition then deteriorated, without additional drug usage, and it took him six weeks to recover. These facts, as well as the testimony of both experts, indicate that defendant was insane at the time he killed his brother. The defendant, with a proper presentation, might have been able to present a successful insanity defense. He was precluded from doing so by the trial court's absolute rejection of any consideration of such a defense.

We therefore conclude that defendant was deprived of a fair trial when the trial court rejected his insanity defense. Defendant's conviction is reversed and the case is remanded for a new trial, in which the issue of defendant's sanity and the effects of PCP should be more fully explored.

Reversed and remanded.

V. J. BRENNAN, J. *(dissenting.)* I respectfully dissent.

I feel that there was more than sufficient evi-

dence to support the trial judge's finding of guilty of second-degree murder but mentally ill.

The court found that the defendant was not legally insane. This area of the law which interprets voluntary intoxication or drug abuse is a little thin and, therefore, much discretion should be given to the trial court, especially when hearing a case without a jury. Discretion is necessary because of the thorny and cobwebbed route the judge must take to explore the mental processes of a defendant before, during, and after a vicious type killing such as we have here.

A recent opinion of our Supreme Court has separated, to some extent, the mental processes a trier of fact must follow before reaching a verdict in this area of the law. *People v Ramsey,* 422 Mich 500; 375 NW2d 297 (1985).

The Court said:

"Our statutory scheme rcognizes a continuum of mental functioning. A person is mentally ill if suffering from 'a substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life.' MCL 330.1400a; MSA 14.800(400a). A person is insane, however, only if that substantial impairment results in the lack of 'substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.' MCL 768.21a; MSA 28.1044(1). Under these definitions, one must be mentally ill before he can be found insane, but the converse is not true. As stated by Justice Cavanagh in *People v Fultz,* 111 Mich App 587, 590; 314 NW2d 702 (1981):

" 'Insanity by definition is an extreme of mental illness. When a person's mental illness reaches that extreme, the law provides that criminal responsibility does not attach. To put it alternatively, the statutes

provide that all insane people are mentally ill but not all mentally ill people are insane.' " 422 Mich 513-514.

MCL 768.36(1); MSA 28.1059(1) provides:

"If the defendant asserts a defense of insanity in compliance with section 20a [MCL 768.20a; MSA 28.1043(1)], the defendant may be found 'guilty but mentally ill' if, after trial, the trier of fact finds all of the following beyond a reasonable doubt:

"(a) That the defendant is guilty of an offense.

"(b) That the defendant was mentally ill at the time of the commission of that offense.

"(c) That the defendant was not legally insane at the time of the commission of that offense."

MCL 768.21a; MSA 28.1044(1) defines insanity:

"A person is legally insane if, as a result of mental illness * * * that person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

Finally, mental illness is defined in MCL 330.1400a; MSA 14.800(400a) as:

"[A] substantial disorder of thought or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life."

I would find, from these facts, that the trial court's decision was not clearly erroneous in finding that defendant was not legally insane.

I would affirm.