*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 27, 2022

Plaintiff-Appellee,

v

No. 351633
Wayne Circuit Court
LC No. 19-001500-01-FC

DEXTER CARL JONES,

Defendant-Appellant.

Before: RICK, P.J., and RONAYNE KRAUSE and LETICA, JJ.

PER CURIAM.

Defendant, Dexter Carl Jones, appeals by right his October 3, 2019 jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a); assault with intent to murder, MCL 750.83; unlawful driving away of a motor vehicle, MCL 750.413; assault with a dangerous weapon, MCL 750.82; and felony-firearm, MCL 750.227b. We affirm.

This case arises out of defendant's act of murdering his friend, Ronnie Lott, shooting at a second victim, Shelby Knowles, and unlawfully driving away Lott's vehicle. Defendant, Lott, and Knowles had known each other for over 25 years. In September 2018, according to Knowles, defendant called Knowles to come over to discuss a car and car insurance. Knowles drove himself and Lott to defendant's home in Lott's car because Lott could not drive as a result of a recent spinal surgery. Knowles parked in front of defendant's home and got out to knock on defendant's door. After knocking, he sat in the back passenger side seat behind Lott. After several minutes, defendant came outside and sat in the driver's seat of the car.

Defendant had a beer and half a pint of liquor with him. Knowles could tell that defendant had been drinking, but thought that defendant was okay and acting normally. Defendant and Lott spoke for several minutes about a car and then defendant fell asleep. Lott woke defendant up, but defendant fell back asleep twice more. The third time that defendant fell asleep, Knowles got out of the backseat and went around to the driver's side door. When defendant woke up for the third time, he stumbled as he got out of the car. He told Knowles to get out of his way and pushed him.

Knowles went to the passenger side of the car to get Lott's walking cane. When he looked up, defendant was pointing a handgun at Knowles. Defendant did not say anything and fired the

gun. Knowles was not hit and ran to hide at the back of the car. Defendant moved around the front of the car and said that he was going to kill both victims. Lott asked what defendant was doing, and Knowles ran behind a tree and then between two houses until he came to an alley, at which point he heard three more gunshots. Knowles flagged down people to call 911 and when he went back to the scene, Lott's car, defendant, and Lott were gone.

Christopher Norman, who lived near defendant, testified that, on the day of the offenses, he was sitting on his porch. He heard noises that sounded like fireworks and saw two men standing outside of a Honda having an altercation and one man sitting inside the vehicle. One of the men had a gun and was chasing the other man, who eventually ran away. The man with the gun shot into the car and then got into the Honda and drove away.

Later that evening, defendant returned home. Police officers were outside and arrested defendant. Two officers testified that defendant appeared to be intoxicated at the time of his arrest. That same night, officers found Lott's car, with Lott inside, deceased.

Defendant testified that he did not know that Knowles and Lott were coming over on the day of the incident, and he drank beer and liquor throughout the day. Defendant was asleep when he heard loud knocking on his door. Defendant got his gun and went to the door. When he saw that it was the victims, he put the gun in his holster and went out to speak with them. Defendant could not remember if he drank while in the car with Knowles and Lott, and he did not remember having an argument with them.

Defendant did not think that he shot Lott because the last thing that he remembered was walking toward his house. Later, defendant woke up on the front porch of an abandoned house. Defendant testified that he did not walk to the abandoned house and thought that somebody drove him there, but that he was asleep at the time. After waking up, defendant walked home. Defendant still had his gun and did not notice that he had blood stains on his shirt.

The jury found defendant guilty of all charges. Defendant moved for an acquittal, new trial, or an evidentiary hearing on the basis that the prosecution did not timely file a signed information and defense counsel was ineffective for failing to notice and object to the error. The trial court denied defendant's motion. This appeal followed.

Defendant argues first that his case should be dismissed on jurisdictional grounds because the prosecution failed to sign the information. We disagree.

This Court reviews de novo the interpretation of court rules and matters of subject-matter jurisdiction. *People v Clement*, 254 Mich App 387, 389-390; 657 NW2d 172 (2002). This Court also reviews de novo questions of statutory interpretation. *People v Anderson*, 501 Mich 175, 182; 912 NW2d 503 (2018).

Circuit courts are courts of "general jurisdiction." MCL 600.151. "The circuit court shall have original jurisdiction in all matters not prohibited by law." Const 1963, art 6 § 13. Specifically, circuit courts have jurisdiction over felony cases. *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Pursuant to MCR 6.008(B), the "circuit court has jurisdiction over all felonies from the bindover from the district court unless otherwise provided by law."

-2-

"The purpose of an arraignment is to provide formal notice of the charge against the accused." *People v Waclawski*, 286 Mich App 634, 704; 780 NW2d 321 (2009). The information provides the defendant with notice of the charges that he or she faces. *Id*. at 706. "The dispositive question in determining whether a defendant was prejudiced by a defect in the information is whether the defendant knew the act for which he or she was being tried so that he or she could adequately put forth a defense." *Id*.

MCL 767.40 provides that the prosecution "shall" sign the information that it files. Likewise, MCR 6.112(D) provides that an "information must set forth the substance of the accusation against the defendant" and the prosecution "must sign the information." MCR 6.112(H) provides that a court may permit the prosecution to amend the information before, during, or after trial "unless the proposed amendment would unfairly surprise or prejudice defendant."

Defendant refers to no authority that supports his argument that the lack of signature divested the trial court of jurisdiction. See *People v Thomas*, 1 Mich App 118, 128; 134 NW2d 352 (1965). The trial court had jurisdiction over defendant's case after the district court bound defendant over on all charges following a preliminary examination. See *In re Elliott*, 315 Mich 662, 675; 24 NW2d 528 (1946); *People v Curtis*, 389 Mich 698, 707; 209 NW2d 243 (1973). "The circuit court does not lose jurisdiction, where a void or improper information i[s] filed." See *In re Elliott*, 315 Mich at 675.

Rather than an issue of jurisdiction, "[i]t is a fundamental due process right that a defendant know the nature and cause of the accusations being made against him," which is "one of the most important functions of the arraignment." *People v Thomason*, 173 Mich App 812, 814-815; 434 NW2d 456 (1988). Likewise, the information informs a defendant of the charges that he or she faces in order for the defendant to adequately prepare a defense. See *Waclawski*, 286 Mich App at 706. In this case, defendant waived the reading of the information during his arraignment after a full preliminary examination was held regarding the charges that he faced. A warrant, signed complaint, and unsigned information were all part of the lower court record. Therefore, although the prosecution undoubtedly erred by failing to sign the information, that failure did not divest the trial court of jurisdiction when an arraignment was held, and defendant was aware of the charges that he faced. See *In re Elliott*, 315 Mich at 674-675, 677.

Furthermore, defendant has not established that he was prejudiced by the unsigned information. See *Waclawski*, 286 Mich App at 706. Pursuant to MCL 769.26, a conviction will not be reversed "for any error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." Additionally, MCL 767.76 provides, in relevant part:

> [N]or shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter as the court shall in its discretion permit. The court may at any time before, during or after the trial amend the indictment in respect to any defect,

imperfection or omission in form or substance or of any variance with the evidence.[1]

MCR 6.112(G) also provides:

> Harmless Error. Absent a timely objection and a showing of prejudice, a court may not dismiss an information or reverse a conviction because of an untimely filing or because of an incorrectly cited statute or a variance between the information and proof regarding time, place, the manner in which the offense was committed, or other factual detail relating to the alleged offense.

The prosecution properly filed a felony warrant and signed felony complaint, each of which included all of the charges of which defendant was eventually convicted. A preliminary examination was held, during which the district court read the charges that defendant faced. Thereafter, the prosecution filed the unsigned information in the lower court. Defendant waived the reading of the information at his arraignment, and there was no indication that defendant was not fully aware of the charges that he faced and able to prepare his defense. Defendant, therefore, received thorough notice of the charges that he faced and has not established that he was prejudiced by the lack of a signed information. See *Waclawski*, 286 Mich App at 707.

Although defendant argues that MCR 6.112(G) does not provide that harmless error applies to an unsigned information, MCL 767.76 provides that a conviction shall not be "reversed on account of *any* defect in form or substance of the indictment" (emphasis added). Moreover, had defendant raised the issue at arraignment or before trial, the trial court could have allowed the prosecution to sign the information. See MCL 767.76; MCR 6112(H).

Defendant relies on *In re Bail Bond Forfeiture*, 496 Mich 320, 339-340; 852 NW2d 747 (2014) to argue that the prosecution failed to follow "mandatory procedures," requiring the dismissal of the case. In *In re Bail Bond Forfeiture*, 496 Mich at 339-340 the Michigan Supreme Court explained:

> When a statute provides that a public officer "shall" do something within a specified period of time and that time period is provided to safeguard someone's rights or the public interest, as does the statute here, it is mandatory, and the public officer who fails to act timely is prohibited from proceeding as if he or she had acted within the statutory notice period.

However, in that case, the issue was the trial court's failure to provide *notice* to a surety and the notice requirement protected the surety and the public by allowing for more effective pursuit of the absconding defendant. *Id.* Further, the Michigan Supreme Court explained that the mandatory construction of the statute would not injure private rights or the public interest. *Id.* at 753. In this case, overturning a conviction would potentially endanger the public. Additionally, in *People v Hall*, 435 Mich 599, 614-615; 460 NW2d 520 (1990), our Supreme Court overruled caselaw requiring automatic reversal of an otherwise valid conviction for an error at preliminary

---

[1] MCL 767.2 provides that the law applying to indictments applies to informations.

examination as an "inexcusable waste of judicial resources" that "contorts the preliminary examination screening process so as to protect the guilty rather than the innocent." The Court relied on *US v Mechanik*, 475 US 66, 72; 106 SCt 938; 89 LEd2d 50 (1986), in which Chief Justice Rehnquist explained:

> The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences. The passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible. Thus, while reversal may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution, and thereby cost society the right to punish admitted offenders. Even if a defendant is convicted in a second trial, the intervening delay may compromise society's interest in the prompt administration of justice, and impede accomplishment of the objectives of deterrence and rehabilitation. These societal costs of reversal and retrial are an acceptable and often necessary consequence when an error in the first proceeding has deprived a defendant of a fair determination of the issue of guilt or innocence. But the balance of interest tips decidedly the other way when an error has had no effect on the outcome of the trial. [cleaned up.]

Our Supreme Court further explained:

> Procedural rules are not to be things to which individual litigants have claims in and of themselves. Nothing is so subversive of the real purposes of legal procedure as individual vested rights in procedural errors. Although we do not overlook the concerns expressed in the dissenting opinion, we believe the availability of an interlocutory appeal affords protection in those cases where an innocent accused should have been screened out by the preliminary examination process. Given the viability of that remedy and the enormous price of reversing valid convictions obtained pursuant to fair, error-free trials, we cannot support application of the automatic reversal rule under which circumstances such as those presented in this case. [*Hall*, 435 Mich at 615 (cleaned up)].

The purpose of the information was to inform defendant of the charges that he faced, and defendant was clearly made aware of those charges. See *Waclawski*, 286 Mich App at 706.

Defendant argues that his liberty interest was at stake and that the prosecution should not be permitted to ignore statutes and court rules. It is true that the prosecution must abide by certain requirements in order to protect the public and defendants' rights. However, in this case, defendant's rights were well protected by the signed complaint, his appointed attorneys, his preliminary examination, his arraignment, numerous pretrial hearings, and a jury trial. Moreover, MCL 769.26 and MCL 767.76 also provide that convictions "shall" not be reversed on the basis of defects in the information or pleadings and procedures. Therefore, defendant is not entitled to a reversal of his conviction on the basis of the prosecution's failure to sign the information. See *Waclawski*, 286 Mich App at 707-708.

Defendant argues next that he was denied effective assistance of counsel on the basis of defense counsel's failure to object to the unsigned information. We disagree.

The question whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court reviews for clear error a trial court's findings of fact and reviews questions of law de novo. *Id*.

In order to establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). "A counsel's performance was deficient if it fell below an objective standard of professional reasonableness." *Id*. Counsel's performance prejudiced the defense if there is a reasonable probability that, but for the error, the outcome would have been different. See *id*.

First, defendant has not shown that defense counsel's performance was deficient. See *Fyda*, 288 Mich App at 450. Defendant was aware of the charges that he faced because of the felony warrant, signed felony complaint, preliminary examination, and arraignment, and unsigned felony information. Further, as previously discussed, there is no legal justification for the dismissal of a case or the reversal of a conviction on the basis of an unsigned information when the defendant has notice of the charges that he faces. Consequently, there is no basis to the claim that defendant's case would have been dismissed had defense counsel objected to the unsigned information.

Second, defendant has not provided any evidence that defense counsel's failure to object to the unsigned information prejudiced him. See *Fyda*, 288 Mich Ap at 450. Even if defense counsel should have objected to the prosecution's error, defendant was not prejudiced by the prosecution's failure to file a signed felony information because defendant had proper notice of all the charges that he faced. See *Waclawski*, 286 Mich App at 707-708. Further, had defendant raised the issue before trial, the trial court could have permitted the prosecution to remedy the issue. See MCL 767.76; MCR 6.112(H). The trial court still had the ability to allow the prosecution to refile a signed information at the time that the trial court denied defendant's motion to reverse the conviction, see MCL 767.76, indicating that the trial court would not have dismissed defendant's case even with a timely objection. Because the unsigned information did not divest the trial court of jurisdiction or prejudice defendant, defendant was not denied effective assistance of counsel. See *Fyda*, 288 Mich App at 450.

Defendant next ascribes error claiming the trial court erroneously denied defendant's request to instruct the jury on involuntary intoxication and insanity. We disagree.

This Court reviews de novo claims of instructional error and for an abuse of discretion a trial court's determination whether a jury instruction is applicable to the facts of a case. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). This Court reviews the instructions in their entirety. *Id*. Reversal is not warranted when the instructions "sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Id*.

MCL 768.21a(1) specifies "[i]t is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the

offense." A defendant is legally insane if the mental illness results in the defendant "lack[ing] substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MCL 768.21a(1). "[T]he defense of involuntary intoxication is part of the defense of insanity when the chemical effects of drugs or alcohol render the defendant temporarily insane." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992). However, a person is not considered to be legally insane solely on the basis of being under the influence of voluntarily consumed alcohol. MCL 768.21a(2).

In *People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002) (cleaned up), the Michigan Supreme Court explained:

> A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction. However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice. The defendant's conviction will be not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative.

MCL 768.29 provides that it is the judge's duty "to limit the introduction of evidence and the argument of counsel to relevant and material matters." An appellate court should only reverse a conviction when there is substantial evidence to support the denied instruction. *People v Cornell*, 466 Mich 335, 365; 646 NW2d 127 (2002). See also *People v Hoskins*, 403 Mich 95, 100; 267 NW2d 417 (1978).

M Crim JI 7.10 provides as follows:

> (1) A person is not legally insane just because he was voluntarily intoxicated by alcohol or drugs at the time of the crime.
>
> (2) Drug intoxication is not voluntary and may be a defense if the defendant was unexpectedly intoxicated by the use of a prescribed drug. Intoxication was not voluntary where,
>
> (a) the defendant did not know or have reason to know that the prescribed drug was likely to be intoxicating,
>
> (b) the prescribed drug, not another intoxicant, must have caused the defendant's intoxication, and
>
> (c) as a result of the intoxication, the defendant was rendered temporarily insane or lacked the mental ability to form the intent necessary to commit the crime charged.

(3) A person can become legally insane by the voluntary, continued use of mind-altering substances like alcohol or drugs if their use results in a settled condition of insanity before, during, and after the alleged offense.

(4) Of course, a mentally ill [or intellectually disabled] person can also be intoxicated, and both conditions may influence what [he / she] does. You should decide whether the defendant was mentally ill [or intellectually disabled] at the time of the crime. If [he / she] was, you should use the definitions I gave you to decide whether [he / she] was also legally insane.

In this case, defense counsel requested that the trial court instruct the jury on M Crim JI 7.10(3) and (4) because of defendant's lack of memory and other evidence that showed that his mental condition had been "permanently altered." The trial court only instructed the jury on the first paragraph of M Crim JI 7.10 because it found that there was no evidence to support that defendant experienced a "settled condition of insanity" or was mentally ill.

The trial court did not err by denying defendant's request to instruct the jury on M Crim JI 7.10(3) or (4). See *People v Mills*, 450 Mich 61, 82-83; 537 NW2d 909 (1995).On appeal, defendant argues that he reported feeling like he had been "roofied" and refers to his "complete lack of memory" and a cup in Lott's car from which defendant did not remember drinking. However, defendant testified that he drank throughout the day of the offense, including a 22 ounce beer and a pint of liquor before he went to the store and bought the 12 ounce beer and a half pint of liquor that he took with him to Lott's car. Knowles testified that defendant had beer and liquor with him when he got into Lott's car and fell asleep three times while in the car, and Knowles could tell that defendant had been drinking. After the offense, multiple officers could tell that defendant appeared to be intoxicated.

Defendant argues that the trial court erred by refusing to instruct the jury on all provisions of M Crim JI 7.10 and broadly argues involuntary intoxication as it relates to insanity. At trial, defense counsel only requested that the trial court instruct the jury on M Crim JI 7.10(3) and (4), rather than on M Crim JI 7.10(2). The only evidence that defendant was involuntarily intoxicated came from his next-day statement to the police, in which defendant speculated that he was "roofied." However, the explanation supported by the evidence at trial was that defendant was highly intoxicated. Defendant admitted to drinking copious amounts of alcohol, and he repeatedly fell asleep. Moreover, at trial, defendant never testified that he was "roofied," but, instead, recognized that he previously suffered blackouts due to his excessive drinking. The trial court found that there was no extrinsic evidence that defendant had been "roofied" and, therefore, properly declined to give the instruction on involuntary intoxication.

Defendant relied on *People v Wilkins*, 184 Mich App 443, 449; 459 NW2d 57 (1990), in which this Court explained that involuntary intoxication was a defense within the insanity defense. However, in *Wilkins*, 184 Mich App at 445-446, the error was in the trial court denying the defendant's request to have a pharmacist and clinical psychologist testify regarding the combination of defendant's prescription medication and alcohol. In this case, the evidence showed that defendant had been voluntarily drinking significant quantities of alcohol on the day of incident. There was no evidence that he drank anything involuntarily or of unknown contents or that he should not have been aware of the effect of his drinking. Specifically, defendant testified

that he had "blacked out" before, meaning that there were other incidents of him not remembering what happened while drinking.

Moreover, there was no evidence that outside of periods of intoxication that defendant's alcohol use altered his mental condition. A "settled condition of insanity" need not be permanent, but it must be a condition that "persist[s] even after the direct influence of the intoxicant ha[s] ceased." See *People v Conrad*, 148 Mich App 433, 439-441; 385 NW2d 277 (1986). The prosecution indicated at trial that defendant had been referred for an evaluation and determined to be criminally responsible. Defense counsel did not dispute the assertion, and the register of actions supports that there was a referral for a competency determination at the district-court level. Therefore, the trial court properly found that there was no evidence that defendant's drinking resulted in a "settled condition of insanity" or that he was mentally ill. See M Crim JI 7.10(3) and (4). Although it may be unexplained and surprising that defendant shot at Knowles and fatally shot Lott, there was no evidence that defendant was anything other than voluntarily intoxicated and that he should not have reasonably known that he would become intoxicated or impaired. See MCL 768.37.

Even had the trial court erred by failing to instruct the jury on M Crim JI 7.10(3) and (4), defendant failed to establish that it was more probable than not that the decision was outcome-determinative. See *People v Hawthorne*, 474 Mich 174, 184-185; 713 NW2d 724 (2006). There was no evidence that defendant suffered a "settled condition of insanity" and no indication that the jury, who found defendant guilty of all charges, would have found him not guilty as a result of his voluntary consumption of alcohol. Furthermore, M Crim JI 7.10(3) pertains to *voluntary* use of mind-altering substances, which is inconsistent with defendant's claim to have been "roofied," and M Crim JI 7.10(4) only clarifies that mentally ill persons can become intoxicated. Defendant did not ask the trial court to read M Crim JI 7.10(2). Conversely, the trial court correctly instructed the jury that voluntary intoxication was not a defense; it did not instruct the jury that involuntary intoxication was irrelevant. Indeed, defense counsel extensively argued that defendant acted grossly out of character as a result of being roofied and had no recollection of events, which, in combination with the trial court's instructions that defendant must have meant to commit the charged crimes, clearly permitted the jury to find defendant not guilty by reason of insanity through involuntary intoxication. Therefore, the trial court did not err by denying defense counsel's request to instruct the jury on M Crim JI 7.10(3) or (4). See *Mills*, 450 Mich at 82-83.

Affirmed.

/s/ Michelle M. Rick
/s/ Amy Ronayne Krause
/s/ Anica Letica

-9-