*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARQUES KEONTE WATSON,

Defendant-Appellant.

UNPUBLISHED
August 18, 2025
12:07 PM

No. 367346
Macomb Circuit Court
LC No. 2022-001209-FC

Before: REDFORD, P.J., and RIORDAN and BAZZI, JJ.

PER CURIAM.

Defendant, Marques Keonte Watson, appeals as of right his jury convictions and sentences for conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529(1); and third-degree fleeing and eluding, MCL 257.602a(3).[1] The trial court sentenced defendant to concurrent terms of 240 to 450 months' imprisonment for conspiracy to commit armed robbery and 30 to 60 months' imprisonment for third-degree fleeing and eluding. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences, but remand solely for the ministerial task of correcting the judgment of sentence.[2]

## I. BASIC FACTS

Defendant's convictions arise from an armed robbery committed by Taj Collins, Daequan Giles, Kyron Holt, and O'Marion Young, and a subsequent car chase with police officers on November 1, 2021.[3] The armed robbery occurred at an apartment complex on Seaglass Drive, in Sterling Heights, Michigan. The day of the robbery, the victims, three men, were moving furniture

---

[1] The jury acquitted defendant of conspiracy to commit first-degree home invasion, MCL 750.157a and MCL 750.110a(2).

[2] Defendant's judgment of sentence states that he was convicted of conspiracy to commit first-degree home invasion when the jury acquitted defendant of this offense.

[3] None of these defendants have appeals pending before this Court.

out of an apartment.  During a trip to a dumpster in the apartment complex parking lot, one of the victims noticed a white Chevy Cruze with a license plate for a different state backed into a parking spot with its engine idling.  When the victims were about to return to the apartment, they were approached by Collins, Giles, Holt, and Young, who were wearing ski masks and armed with guns.  The assailants pointed the guns at the victims and demanded to be taken upstairs.  Thereafter, the assailants took items from the victims, such as jewelry, a wallet, cash, and an Apple watch, before leaving the apartment.  Collins took a set of keys from the apartment and drove one of the victim's Dodge Charger Hellcat away from the scene of the robbery.  The remaining assailants got into the Chevy Cruze, which also drove away from the scene.

Police officers responded to 911 calls for the armed robbery and engaged in high-speed car chases with the Dodge Charger and Chevy Cruze.  Collins was apprehended after he drove the Dodge Charger down Van Dyke Road and came to a rest near a Chrysler plant.  The Chevy Cruze was chased by police cruisers until it came to rest on a residential street and the assailants fled the scene.  The same day, defendant and the three other assailants were apprehended at the apartment of defendant's friend and arrested.

At trial, defendant admitted that he drove Collins and the other assailants to the apartment in the Chevy Cruze on the day of the armed robbery.  However, defendant testified that Collins had only asked defendant to drive him and his associates to a drug deal at the apartment complex.  He denied that he had any knowledge that the other assailants intended to commit an armed robbery.  Defendant further admitted that he drove the Chevy Cruze during the police chase.  He asserted that he did not comply with police officers' demands to stop the vehicle because he was scared and panicked.  Additionally, defendant testified that the day before the robbery, defendant drove Collins to a gas station to buy marijuana and noticed that Collins left a gun in his car.  Defendant testified that he picked up the gun and gave it to Collins.  Defendant also testified that he was "slow," meaning he had a cognitive impairment.

The prosecution admitted into evidence a gun with a flashlight attachment and a "full auto conversion on the back of the slide" that was found in the parking lot of the Chrysler plant.  It was collected and swabbed for DNA.  There was a high probability that defendant was a contributor to DNA collected from the gun's trigger.  Five other guns connected to the armed robbery were also collected and swabbed for DNA, but defendant was excluded as a contributor to that DNA.  In a search of the Chevy Cruze, police officers found a license plate on the driver's side floorboard area that was registered in defendant's name and one of the victim's wallets.  Data from a GPS tracking device defendant was wearing during the day of the armed robbery placed him at the Seaglass Drive apartment complex from 1:00 p.m. to 4:11 p.m.  Additionally, data from the GPS tracking device indicated that defendant was at the same address from 9:20 p.m. to 10:55 p.m. and 11:55 p.m. to midnight on October 31, 2021, the day before the armed robbery.

Defendant was convicted and sentenced as previously described.  After his trial, defendant submitted to a psychological evaluation and moved for a new trial or for a *Ginther*[4] hearing to present evidence in support of a claim of ineffective assistance of counsel. Defendant argued trial counsel failed to investigate defendant's cognitive impairments and secure an expert witness to

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

testify about his mental health and impairments. The trial court denied the motion without holding a *Ginther* hearing. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first contends he received ineffective assistance of counsel because trial counsel did not present expert testimony regarding defendant's cognitive impairments at trial. We disagree.

We review for an abuse of discretion a trial court's decision on a motion for a new trial. *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (1998), and a trial court's decision whether to hold an evidentiary hearing. *People v Unger*, 278 Mich App 210, 216-217; 749 NW2d 272 (2008). Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and law. *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017). We review a trial court's findings of fact, if any, for clear error, and review de novo questions of constitutional law. *Id*. When, as in this case, a *Ginther* hearing has not been held, review is generally limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

Criminal defendants have a right to the effective assistance of counsel. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); See US Const, Am VI; Const 1963, art 1, § 20. To prove ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Id*. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. The decision to call a witness is presumed to be a matter of trial strategy. *People v Jackson*, 313 Mich App 409, 431-432; 884 NW2d 297 (2015).

Defendant first argues that trial counsel was ineffective for failing to investigate his mental health history and diagnoses and failing to hire an expert to defend against the charge of conspiracy to commit armed robbery at trial. On appeal, defendant denies that his argument is that trial counsel was ineffective for failing to present a diminished-capacity defense, which is not a valid defense in Michigan, see *People v Carpenter*, 464 Mich 223, 235-237; 627 NW2d 276 (2001), but rather that trial counsel should have presented the evidence of his mental health history for an otherwise permissible purpose. Because defendant has substantively argued that trial counsel was ineffective for failing to present a diminished-capacity defense, this argument is without merit.

Before 2001, defendants were permitted to present a diminished-capacity defense, which "allow[ed] a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime." *Id*. at 232. However, in

*Carpenter*, our Supreme Court held that a diminished-capacity defense is not viable under Michigan law:

> [B]y enacting a comprehensive statutory scheme setting forth the requirements for and the effects of asserting a defense based on either mental illness or mental retardation, the Legislature has signified its intent not to allow a defendant to introduce evidence of mental abnormalities short of legal insanity to avoid or reduce criminal responsibility by negating specific intent. [*Id*. at 226.]

Several years later in *People v Yost*, 278 Mich App 341; 749 NW2d 753 (2008), this Court examined when a defendant may present evidence of his mental capacity after the abolition of the diminished-capacity defense. We held that evidence of a defendant's limited mental capacity may be admissible if the evidence "make[s] a fact that is of consequence to the determination of the action more or less probable without such evidence being offered to negate the specific-intent element of the charged offense." *Id*. at 355-356. In *Yost*, the prosecution's theory of the case was that the defendant caused the victim to overdose on a prescription antidepressant. *Id*. at 356-357. In support of this theory, the prosecution presented evidence of the defendant's statements and actions from before and after the victim's death, "which suggested that [the] defendant was attempting to cover up her involvement in [the victim's] death or otherwise had a guilty conscience." *Id*. at 357. The defendant attempted to offer evidence of her mental capacity not to negate intent, but to "place [the] defendant's statements in context so that the jury could fully and fairly determine whether [the] defendant's statements and actions were truly indicative of a guilty conscience or were merely misinterpreted by the listeners and observers who witnessed the statements and actions." *Id*. This Court held that the trial court abused its discretion by excluding evidence of the defendant's mental capacity for this purpose. *Id*. at 365.

In this case, defendant was convicted of conspiracy to commit armed robbery. MCL 750.157a provides that "[a]ny person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . ." This Court has defined conspiracy as a "mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means." *People v Cotton*, 191 Mich App 377, 392; 478 NW2d 681 (1991). "Conspiracy is a specific-intent crime, because it requires both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). The elements of armed robbery are as follows:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

According to defendant, evidence of his mental health history and diagnoses would have been relevant and admissible to rebut the prosecution's theory of the case that defendant was the

-4-

lookout and getaway driver for the armed robbery and to support his defense theory that he was only present during the offense to give his drug dealer a ride. In *Yost*, the evidence of the defendant's mental capacity was relevant to explain her pre- and post-offense conduct that was itself not criminally culpable. See *Yost*, 278 Mich App at 357. In this case, contrary to defendant's assertions, he only argues that evidence of his mental health and diagnoses was relevant to explain that his conduct of giving his drug dealer a ride was misinterpreted as criminal conduct. Stated otherwise, defendant has argued that evidence of his mental health would show he lacked the mental capacity to understand his role or to participate in a conspiracy to commit armed robbery, which is the essence of a diminished-capacity defense. Because the only purpose for which this evidence would be presented would be to negate the intent element of the charged offense, see *Mass*, 464 Mich at 629, this evidence was inadmissible at trial. See *Carpenter*, 464 Mich at 226. Trial counsel was not ineffective for failing to advance evidence of a defense that is not viable under Michigan law. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument . . . does not constitute ineffective assistance of counsel.").

Defendant, by arguing that trial counsel was ineffective for failing to subject defendant to a psychological evaluation to determine if he lacked criminal responsibility, also implicitly argues that trial counsel was ineffective for failing to raise an insanity defense. To the extent defendant has raised this argument, it is without merit.

Unlike a diminished-capacity defense, legal insanity is recognized as an affirmative defense in Michigan. *Carpenter*, 464 Mich at 230-231. A traditional insanity defense requires a defendant to prove by a preponderance of the evidence that he "lacked substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law." *Id*. at 231, quoting MCL 768.21a(1). Mental illness alone does not constitute a defense of legal insanity. MCL 768.21a(1).

Defendant has failed to establish the factual predicate for this assertion of ineffective assistance. See *Carbin*, 463 Mich at 600. In his motion for a new trial and on appeal, defendant relied only on his mental health records and a posttrial psychological evaluation. According to these records, defendant had a history of mental health treatment starting when his father was murdered in 2013. His mental health records from the Michigan Department of Corrections ("MDOC") dated from after defendant was convicted of this offense also mention an "unspecified schizophrenia spectrum and other psychotic disorder." During the posttrial psychological evaluation, defendant reported experiencing visual and auditory hallucinations. The psychological examiner listed previous diagnoses of antisocial personality disorder, unspecified schizophrenia disorder spectrum, generalized anxiety disorder, an unspecified depressive disorder, cannabis use disorder, and post-traumatic stress disorder. According to the psychological examiner, defendant met the criteria for "Borderline Intellectual Functioning," which meant he had "cognitive abilities that are slightly below average but do not meet the criteria for intellectual disability." The psychological evaluator noted that defendant did not disclose psychotic symptoms during the evaluation and, outside of remarking that defendant reported a severe level of depressive symptoms, did not diagnose defendant with any mental disorders. The psychological examiner also explained that "[defendant's] responses suggest he has a tendency to magnify the level of experienced illness or a characterological inclination to complain or to be self-pitying." As such,

the psychological examiner warned that defendant's "[s]cores may be somewhat exaggerated and results should be interpreted with caution."

Defendant's mental health records alone demonstrate that he has a history of mental illness, but they do not demonstrate that he had an inability to conform his conduct to the law or appreciate the wrongfulness of his conduct when he committed the offense. See MCL 768.21a(1). Defendant has presented no evidence linking his mental health history to a lack of substantial capacity, nor has he presented an expert who, on the basis of the circumstances surrounding the offense and defendant's mental health history, could opine that defendant was not criminally responsible. Moreover, evidence regarding defendant's behavior before and during the armed robbery demonstrated that he appreciated the nature and quality of the wrongfulness of his conduct. This included evidence that he was at the Seaglass Drive apartment complex twice the night before the armed robbery, switched out his license plate with an Ohio plate before the armed robbery, drove his coconspirators to the apartment, waited in his car during the armed robbery, and led police on a high-speed chase while driving three of the four coconspirators away from the scene of the armed robbery. As such, under an objective standard of reasonableness, trial counsel was not ineffective for failing to seek a psychological examination before trial. Likewise, defendant cannot establish that he was prejudiced by trial counsel's failure to seek such an evaluation. In the absence of evidence supporting the affirmative defense of insanity, trial counsel was not required to pursue a meritless defense. See *Ericksen*, 288 Mich App at 201.

Finally, defendant contends that coupled with evidence of his mental capacity, trial counsel failed to present evidence of defendant's marijuana use, which could have affected his mental state at the time of the offense. This argument is also without merit. "[A]n individual who is voluntarily intoxicated does not have grounds for an absolute defense based upon his insanity." *People v Caulley*, 197 Mich App 177, 187; 494 NW2d 853 (1992); see also MCL 768.21a(2) ("An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances."). Defendant cites *People v Conrad*, 148 Mich App 433, 439-441; 385 NW2d 277 (1986) (quotation marks omitted), in which this Court held the defendant could raise an insanity defense on the basis of a "settled condition of insanity caused by drug abuse . . . ." However, the defendant in *Conrad*, who used PCP, had symptoms of a "grossly psychotic state[,]" such as "shouting out nonsensical statements, . . . and . . . smear[ing] himself with feces." *Id*. at 436 (quotation marks omitted). Although defendant was diagnosed with a mild cannabis use disorder, he did not identify any similar instances of psychotic behavior caused by his cannabis use. Defendant was not prejudiced by his trial counsel's failure to raise an insanity defense on the basis of defendant's cannabis use. In conclusion, there is no merit to any of defendant's assertions of ineffective assistance of counsel.

### III. PROSECUTORIAL ERROR

Next, defendant contends that the prosecutor committed several acts of prosecutorial misconduct[5] that, cumulative to his assertions of ineffective assistance of counsel, denied defendant a fair and impartial trial. These asserted instances of prosecutorial error are references to defendant's "tether" that were made several times during trial and the prosecutor's introduction of evidence regarding an automatic weapon. As already noted, defendant has failed to establish a claim for ineffective assistance of counsel. We conclude that defendant's claims of prosecutorial error, and therefore his claim of cumulative error, are also without merit.

"In cases alleging prosecutorial misconduct, issues are preserved by contemporaneous objections and requests for curative instructions . . . ." *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020) (quotation marks and citation omitted). Defendant objected to the references to the GPS tracking device as a tether at trial and requested a mistrial. However, he did not object to the prosecutor's reference to the tether during closing arguments. Therefore, only the first portion of this issue is preserved for appellate review. See *id*. Defendant also objected to admission of testimony regarding the automatic weapon on the basis that it was gratuitous character evidence and requested a mistrial. This portion of the issue is preserved for appellate review. See *id*.

Generally, we review preserved claims of prosecutorial error de novo. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). However, unpreserved claims of prosecutorial error are reviewed for plain error affecting substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

The test for prosecutorial error is whether the prosecutor "committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Cooper*, 309 Mich App at 88. We review claims of prosecutorial error on a case-by-case basis, examining the pertinent portion of the record and evaluating a prosecutor's remarks in context. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not." *People v McLaughlin*, 258 Mich App 635, 649; 672 NW2d 860 (2003).

Defendant first asserts that the prosecutor erred by referring to and eliciting testimony that defendant was placed on a tether despite the trial court precluding reference to the GPS tracking device as a tether. Before trial, defendant moved to preclude the prosecutor from eliciting testimony that defendant was on a GPS tracking device during the offense. The trial court permitted the prosecutor to elicit testimony regarding the GPS tracking device to establish

---

[5] This Court has noted that while "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, . . . these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). Because defendant's allegations involve conduct, that even if error, would not rise to the level of professional misconduct, we use the term "prosecutorial error" to refer to defendant's claims. Our quotation of caselaw using the term "prosecutorial misconduct" should be understood to include claims of prosecutorial error.

defendant's location during the offense, but precluded the prosecutor from referring to the device as a tether and precluded the witness from identifying himself as a MDOC employee.

Despite this ruling, the GPS tracking device was referred to as a tether several times at trial. First, during direct examination, Corporal David Loftis of the MDOC referred to the device as a tether several times during his direct examination. The prosecutor also elicited testimony from Corporal Loftis that the GPS tracking device was located on defendant's ankle. After Corporal Loftis was excused, defendant objected outside the presence of the jury. In response to the objection, the prosecutor acknowledged that Corporal Loftis referred to the device as a tether several times before correctly referring to the device as a GPS tracking device. The prosecutor explained that he did not want to draw the jury's attention to Corporal Loftis's use of the term during his testimony by correcting him. The prosecutor also explained that he warned Corporal Loftis before his testimony not to refer to the device as a tether. The trial court held that the references to the tether were harmless error and that the prosecutor's question asking Corporal Loftis to describe the location of the device on defendant's person was proper. The trial court also offered to issue a curative instruction.

Later, Corporal Loftis testified again as a rebuttal witness and referred to the device as a tether several more times. Thereafter, trial counsel unsuccessfully moved for a mistrial again. The trial court noted that Corporal Loftis was dismissed before defendant's first objection to use of the term and therefore was not present for the discussion regarding use of the term. The trial court again concluded that use of the term was harmless. Finally, the prosecution made one additional reference to defendant's tether during closing arguments: "Him being able to move in that small apartment still moved his tether or him, I'm sorry, his GPS tracking device around . . . ."

After the close of proofs, the trial court issued the following curative instruction to the jury:

You have heard evidence that the defendant had a GPS tracking device associated with his person. This device was not to be called a tether, but was referred to numerous times as such. You should not make any inferences of other wrong acts from the fact that the defendant had a GPS tracking device associated with his person. It is not evidence of any convictions or conduct. It can only be considered regarding the location of the defendant at a given time.

The trial court also instructed the jury that the statements and arguments made by the attorneys are not evidence.

Viewed in context, it is clear that the prosecutor did not intentionally elicit Corporal Loftis's objectionable testimony referring to the GPS tracking device as a tether. Rather, the prosecutor explained that he warned Corporal Loftis not to refer to the GPS tracking device as a tether during his testimony and indicated that he did not want to draw further attention to use of the improper term by correcting Corporal Loftis during his testimony. These instances of unresponsive answers are not examples of prosecutorial misconduct. See *Jackson*, 313 Mich App at 427 ("As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony.")

(quotation marks, citation, and alteration omitted). However, the prosecutor erred by using the term "tether" during closing arguments contrary to the trial court's pretrial ruling.

Regardless, defendant cannot establish that he was denied a fair and impartial trial. Reference to defendant's placement on a tether is prejudicial because it is common knowledge that persons convicted of crimes and persons awaiting trial on criminal trials are placed on such devices. However, in this case, the potential for prejudice was already present at trial because evidence that defendant was on a GPS tracking device was admitted to show defendant's location and movement in connection with the charged offenses.[6] To the extent the references to the GPS tracking device as a tether were more prejudicial than the references that were ruled admissible at trial, it did not deny defendant a fair and impartial trial. The prosecution did not otherwise disclose the reason defendant was on a tether; no reference was made to defendant's prior offenses, probation, or parole; and the jury was not asked to infer anything about his previous conduct. In fact, any prejudice was cured by the trial court's instruction to the jury only to consider defendant's placement on the GPS tracking device for the purpose of determining defendant's location and the trial court's additional instruction that statements by the attorneys are not evidence. See *Unger*, 278 Mich App at 235 ("Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements[.]"). "[J]urors are presumed to follow their instructions[.]" *Id.* Defendant has pointed to nothing in the lower court record to suggest that the jury did not understand and follow these instructions. Therefore, defendant is not entitled to reversal on the basis of the references to his placement on a tether.

Defendant raised one additional claim of prosecutorial error premised on the prosecutor eliciting testimony describing the automatic weapon found at the Chrysler plant. This claim is without merit.

At trial, the prosecutor questioned Sterling Heights Police Officer Kristopher Fischer regarding a gun that was collected into evidence in relation to the armed robbery. The gun was used in the robbery and was found at the Chrysler plant where Collins was arrested. Officer Fischer described the gun as having a flashlight and "full auto conversion on the back of the slide." Following this testimony, trial counsel objected to reference to the gun as an automatic weapon on the basis that defendant was not charged with possession of an automatic weapon and he was not the one who used the weapon during the armed robbery. Trial counsel argued that reference to the gun as an automatic weapon was gratuitous and only served as impermissible character evidence. Trial counsel requested a mistrial on this basis. The trial court denied the motion for a mistrial, acknowledging that reference to the automatic nature of the weapon was prejudicial to defendant, but was also relevant to describe the circumstances of the armed robbery.

Defendant's argument is "essentially an evidentiary issue framed as prosecutorial misconduct." *Dobek*, 274 Mich App at 70. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id.* The testimony describing the unique attributes of the automatic weapon was admissible to identify it as one of the weapons used in the armed robbery. Even though there was no evidence and the prosecution did not argue that defendant used the

---

[6] On appeal, defendant does not argue that evidence of defendant's placement on the GPS tracking device at trial to show his location during the offense was inadmissible.

automatic weapon during the armed robbery, DNA analysis indicated that there was a high probability that defendant was a contributor to DNA found on the trigger of the automatic gun. The testimony describing the weapon and identifying it as a weapon used in the armed robbery, particularly when considered with the DNA evidence connecting defendant to the gun, was probative of defendant's participation in the conspiracy to commit armed robbery. See *People v Justice*, 454 Mich 334, 347; 562 NW2d 652 (1997) (explaining that evidence of conspiracy "may be derived from the circumstances, acts, and conduct of the parties"). Even if we assumed that the disputed evidence should not have been admitted, defendant has offered no evidence to support a conclusion that the prosecutor did not act in good faith when he elicited testimony regarding the unique attributes of the gun. Accordingly, we also reject defendant's challenge to his conviction on this assertion of prosecutorial error. Likewise, because we conclude there are not multiple instances of prosecutorial error, defendant is not entitled to reversal on the basis of cumulative error. See *McLaughlin*, 258 Mich App at 649.

## IV. REASONABLENESS OF SENTENCE

Finally, defendant argues that his sentence for conspiracy to commit armed robbery was disproportionate to the offense and the offender. We disagree.

As an initial matter, defendant incorrectly asserts that this Court's review is for the reasonableness of his departure sentence. A "departure" sentence is one for which the minimum term of imprisonment exceeds the sentencing guidelines range and any statutory minimum. *People v Wilcox*, 486 Mich 60, 62-63; 781 NW2d 784 (2010). Defendant's sentencing guidelines range for the conspiracy to commit armed robbery conviction was 225 to 375 months' imprisonment, and the trial court sentenced him to a minimum of 240 months' imprisonment. Accordingly, defendant was sentenced within his guidelines range and our review is for the reasonableness of defendant's within-guidelines sentence.

We review for an abuse of discretion a trial court's sentencing decisions. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023).[7] "[P]roportionality must be measured according to the offense and the offender, not according to the sentence's relationship to the guidelines." *Id*. at 356.

Regarding within-guidelines sentences, there is a nonbinding presumption of proportionality. *Id*. at 360. Defendant bears the burden of demonstrating that a within-guidelines sentence is unreasonable. *Id*. at 359. "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted).

---

[7] While Posey was a plurality opinion that is not technically binding, this Court held "it [is] prudent to follow the holding in the interest of judicial economy." *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024), slip op at 4 (Docket No. 353821).

At sentencing, the trial court considered the circumstances of defendant's participation in the conspiracy to commit armed robbery and fleeing the police in the car chase. The trial court also analyzed defendant's prior criminal history, noting the quantity and types of convictions. The trial court acknowledged that it could sentence defendant to a considerably higher sentence, but considered his youth as a mitigating factor before sentencing defendant to a within-guidelines sentence.

Defendant does not challenge the trial court's reliance on any of the aforementioned considerations, but specifically challenges his sentence as disproportionate on the basis that he was the least "culpable" of all of his codefendants and that the trial court was not privy to the extent of defendant's mental health history. Defendant has provided no explanation why either of these arguments would constitute unusual circumstances that would render his sentence disproportionate. First, defendant was convicted of conspiracy, which "shall be punished by a penalty equal to that which could be imposed if he had been convicted of committing the crime he conspired to commit . . . ." MCL 750.157a(a). Because the Legislature has determined that a defendant convicted of conspiracy does not have less culpability than one convicted of the underlying substantive offense, defendant's alleged lesser culpability is not an unusual circumstance and does not overcome the presumption that his sentence is proportionate.

Second, defendant fails to explain why the fact that the extent of his mental health history was not before the trial court was an unusual circumstance. Defendant's mental health, including his struggles with depression and anxiety, were described in his presentence investigation report, which the trial court had at sentencing. The trial court is not required to expressly or explicitly consider mitigating factors at sentencing. *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Defendant having a history of mental health issues is not an unusual circumstance that renders his sentence disproportionate. Because defendant has failed to rebut the presumption of proportionality, his sentence was not unreasonable or disproportionate. The trial court did not abuse its discretion when it sentenced defendant to 240 to 450 months' imprisonment for conspiracy to commit armed robbery.

Affirmed but remanded solely for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Mariam S. Bazzi

-11-